UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


KERWIN BLOUNT                    :

    v.                        :   NO. 3:97CR232(EBB)
                                 NO. 3:03CV1516(EBB)

UNITED STATES OF AMERICA

RULING ON MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE

Petitioner, Kerwin Blount, on September 4, 2003, filed a motion pursuant to 18 U.S.C. § 2255 to vacate, set aside or correct the sentence imposed on him on May 18, 2000, alleging his trial attorney rendered ineffective assistance of counsel.

Petitioner was convicted, following a jury trial, of conspiracy to possess with the intent to distribute cocaine and cocaine base and was sentenced to a term of 292 months, after a two-level downward departure in his adjusted offense level for extraordinary rehabilitation. Petitioner unsuccessfully appealed his conviction. United States v. Blount, 291 F. 3d 201 (2d Cir. 2002)[1]

In his motion petitioner alleges his trial counsel was ineffective (1) in failing to advise him properly as to the advisability of accepting a plea agreement; (2) in failing to file a motion for severance; (3) in not objecting to improper closing arguments by the government; (4) in not requesting the

_____

[1] It appears this petition may be untimely under the one-year limitation imposed by 28 U.S.C. § 2255. The government has not so claimed and, given the court's disposition of the petition, the timeliness issue will not be pursued.

jury determine the applicable drug quantities; (5) in failing to undertake meaningful pretrial investigation, and (6) because counsel was not admitted to the bar until after petitioner's conviction.

Claims of ineffective assistance of counsel are measured by the yardstick set forth in Strickland v. Washington, 466 U.S. 668 (1984)

> The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity      to meet the case of the prosecution" to which they are entitled.  (citations omitted)...The Sixth Amendment recognizes the right to assistance of counsel because      it envisions counsel's playing a role that is critical      to the ability of the adversarial system to produce      j u s t results.

Id. at 685.

For that reason, the Supreme Court has recognized that "the right to counsel is the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970) Counsel can deprive a defendant of the right to effective assistance simply by failing to render "reasonably competent advice." Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)

Strickland has established a two-prong test by which such assistance is to be measured.  First, the defendant must show that counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, at 687.  If this prong is established, the reviewing court proceeds to the second inquiry,

2

whether the deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial whose result was reliable.  Id.

The proper standard for attorney performance is that of reasonably effective assistance under prevailing professional norms.  Id. at 687-88  One of counsel's overarching duties is to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.  Id. at 688.

Judicial scrutiny of counsel's performance must be highly deferential.  The performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances and the reasonableness of counsel's conduct must be judged as of the time of that conduct.  The defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 688-90.

### Plea Discussion

In Petitioner's first claim that he was not properly advised of the merits of pleading guilty, he alleges that, although he was aware that the statutory maximum penalty he was exposed to was a life sentence, he elected to go to trial because his attorney "had led him to believe that the worst case scenario was approximately 17.5 years imprisonment." Petitioner alleges that his counsel had advised him initially that the government had proposed a plea bargain under which, if he cooperated with the prosecution, it would be possible that he

3

would receive a sentence of less than 10 years and, absent cooperation, he could expect a sentence of roughly 12 years. However, because his attorney had advised him the worst case scenario after trial was approximately 17 years, he elected to go to trial.

Petitioner acknowledges his counsel informed him of the government's intention to file an information under 21 U.S.C. § 851 based on his prior conviction which would expose him to a mandatory minimum 20 year sentence. As previously stated, he also acknowledges that counsel had advised him that a life sentence was his maximum exposure. Nevertheless, petitioner claims that "he would have elected to plead guilty if he had been apprised of the actual penalties he faced in this case."

Plaintiff's counsel, in a sworn affidavit, states that at no time did she "tell the petitioner that the government had made an offer to resolve the case with a sentence of 12 years" and that she did tell him that "except in extraordinary circumstances, which did not attach in his case, the government would not agree to a specific sentence."[2] She claims she did advise him that, if he entered a plea of guilty in a timely manner prior to the filing of a second offender information, he would have an argument for a downward departure and "a realistic hope of receiving a sentence of approximately 12 years." She also claims that she advised him that, if convicted after trial,

---

[2]In this court's experience of 27 years, the government has offered a plea agreement for a specific sentence twice.

4

he would face a mandatory minimum 20 year sentence and, under the guidelines, a best case scenario of approximately 24 years.

Petitioner was advised at his arraignment on both the initial and superseding indictments that he faced a sentence, if convicted, of ten years to life.  He also acknowledges he was informed by his attorney that, after the filing by the government, of a second offender information under 21 U.S.C. § 851, the mandatory minimum sentence would be increased to twenty years, refuting his claim that "up until the eve of trial [counsel] had led him to believe the worst case scenario was approximately 17.5 years imprisonment."

Petitioner was appropriately advised by his attorney of the range of sentences to which he was exposed.  His decision to proceed to trial was his own choice thereafter.

<u>Severance</u>

Petitioner next claims his counsel was ineffective in failing to move for a severance of his trial when it became known that the government would present witnesses to testify to a shooting ordered by the co-defendant leader of the conspiracy, Lloyd Streater.

Under Rule 8(b) of the Federal Rules of Criminal Procedure an indictment may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of actions, constituting an offense.  As noted by the Court of Appeals in United States v. Blount, supra, at 209, joint trials of defendants who are indicted together are

5

preferred.     However, under Rule 14(a), if a joinder of defendants appears to prejudice a defendant, the court may sever defendants.   Petitioner alleges that evidence at trial that Streater had procured the non-fatal shooting of a rival drug dealer prior to the time petitioner joined the conspiracy was so prejudicial that his attorney should have moved for severance.

Evidence at trial consisted of videotapes, audiotapes and testimony of agents and co-defendants, which showed that violence, threats and intimidation, including beatings administered by petitioner, were utilized in maintaining discipline in the organization and that petitioner was a lieutenant who, <u>inter alia</u>,travelled often to New York to purchase cocaine and was responsible for at least 60 kilograms of cocaine during the course of his participation in the conspiracy.

In short, the evidence of petitioner's guilt was strong and he cannot show that his joint trial with Streater deprived him of a fair trial with a reliable result.

<u>Closing Argument of Prosecutor</u>

Petitioner alleges further ineffectiveness in his counsel's failure to object to portions of the government's rebuttal argument in that the assistant United States attorney (1) "repeatedly attempted to convince the jury that the prestige of the entire government...stood with him at the podium". Petitioner's Memorandum at 12.

During the course of his argument, the prosecutor stated

the following:  "[M]y comments are not my own.  I speak for the United States, the attorneys, the agents, the witnesses who come before you."  Transcript of December 19, 1999, at 196.  "We're proud of [the] diligent work [of the task force].  As I said, it's not perfect.  It's made up of people.  There's no vendetta here.  These are honest police officers working against a formidable group..." Id. at 197; (2) referred to petitioner's election to testify as evidence of guilt.  "Kerwin Blount is not a stand-up guy.  For three years, he hid everything he did from his girlfriend, his mom, the police.  He only sat on that stand yesterday because he's caught." Id. at 244-245.  "Five people told the truth about this conspiracy.  Five people broke their oath of loyalty...one could not bring himself to do it.  He chose to stick it out with [co-defendant]Lloyd Streater." Id. at 246.  "It's the difference between a person who pleads guilty [cooperating witnesses] and a person who must be proven guilty.  He has the right to a trial.  He has the right to a fair trial.  He's had that right.  It's time to tell him he is responsible for all that he has done."  Id. at 237; (3) opined the cooperating witnesses must be telling the truth and that petitioner lied.  "The puzzle does come together.  The pieces fit not because we manufactured this evidence, not because we prepared these witnesses.  It fit because the people, the evidence, tell the truth.  And the truth is, and the evidence shows that these defendants are guilty.  The witnesses talked about the guilty things that the defendants have done.  They fit

because they're telling the truth." Id, at 197. "You can take the oath you learned in this case and still lie or you can take the oath and still make things up, especially if you have nothing to lose and face twenty to life.  You may as well give it a try like Kerwin Blount did.  Compare his motivation and that of Lloyd Streater to tell the truth to the motivation of the government witnesses.  Streater and Blount have no cooperation agreement.  They risk nothing by lying, whereas the cooperating witnesses risk it all." Id, at 198. "Kerwin Blount lied to others about his own drug dealings, and the lies continue." Id. at 246.  "They [defendants] really think they can fool you." Id. at 244; (4) referred to petitioner's drug addiction and prior felony record, id. at 207, and to having "no remorse about baby-sitting or caring for people while he's addicted and smoking marijuana and selling marijuana and cocaine every day." Id. at 235.

The assessment of the prosecutor's remarks must be viewed in the context of the entire trial and, in particular, the remarks of defense counsel to which he was responding. Petitioner must demonstrate that the prosecutor's remarks prejudiced him. United States v. Sewn Newton, 369 F.3d 659, 680 (2d. Cir. 2004) cert. den. 125 S. CT 371.  When so viewed, the court finds defense counsel's failure to object did not unduly prejudice the defendant.

The evidence against petitioner was strong and the rebuttal argument followed that of three defense counsel who repeatedly

attacked the cooperating witnesses as having lied, <u>Transcript</u> at 96, 97, 101, 102, 106, 110, 111, 114, 115, 126, 151, 156, 178, and the government as having encouraged their testimony and concealing evidence:  "The government put up a building in this courtroom, but the building...is built on lies."  <u>Id</u>. at 97; "Do you think, maybe,...that the reason [the government] didn't put these pictures into evidence is because these pictures showed these witnesses lied to you?" <u>Id</u>. at 101; "Do you think there is a reason why they didn't want you to hear Detective Generroso?  Sure there is.  Because he showed you that Joseph Pollard lied to you." <u>Id</u>. at 116; "The government didn't offer you any evidence at all about these four calls within New York. Who were they to?  He says he called a relative.  Which one is that?...You don't know because they chose not to tell you." <u>Id</u>. at 118-119; "Why didn't you hear it from the government...You think that was not in exchange for his testimony?" <u>Id</u>. at 123; "They bought this testimony by promising that if they testified, they would file a motion." <u>Id</u>. at 143; "The government didn't want her to say anything about Mr.Blount selling marijuana because that's inconsistent with the government's conspiracy theory in this case." <u>Id</u>. at 155; "The government would like to hide that from you ." <u>Id</u>. at 170; The government is trying to hide the facts from you." <u>Id</u>. at 171.

     A vigorous rebuttal after these arguments is not surprising but, in such argument, the government may not vouch for its witnesses' credibility, <u>Newton</u>, <u>supra</u>, at 681, which vouching

may suggest that the prosecutor has additional evidence, not introduced at trial, that supports the witnesses' credibility.

Although the prosecutor's remarks at pages 197, 244, 245 and 246, as quoted, <u>supra</u>, are, in isolation, problematic, no such suggestion is inherent therein. Furthermore, the prosecutor repeatedly cited to the trial evidence that supported the testimony of the witnesses. Defense counsel's decision not to object in this context is not inevitably demonstrative of ineffectiveness.

### Drug Quantity

Petitioner alleges counsel was ineffective in failing to request a finding by the jury of the quantity of drugs attributable to petitioner. Petitioner acknowledges that the decision in <u>Apprendi</u> <u>v</u>. <u>New Jersey</u>, 530 U.S. 466 (2000) postdates his conviction in this case but claims "there was good cause for counsel to seek the instruction at issue;...there were dozens of such cases already before the courts in the wake of <u>Jones</u>." Petitioners Memorandum at 24. Petitioner's similar claim raised in his direct appeal was rejected by the Court of Appeals. <u>Blount</u>, <u>supra</u>, at 214.

### Failure to Investigate

Petitioner alleges that his counsel ignored his numerous requests that she seek out and interview several persons who were possible trial witnesses. However, he neither identifies these witnesses nor proffers what testimony they could provide. He, therefore, fails to demonstrate any prejudice he may have

10

suffered as a result.

<u>Bar Status of Counsel</u>

Petitioner, lastly, challenges his counsel's professional credentials as she was not admitted to practice in Connecticut state courts until after his trial.  However, she was admitted to practice in this federal court on June 30, 1986.

<u>Conclusion</u>

Petitioner has failed to establish that, under <u>Strickland</u>, his counsel rendered a deficient performance which prejudiced his defense.  Accordingly, the petition [Doc. No. 555] is denied.

No certificate of appealability will issue, petitioner having failed to make a substantial showing of the denial of a constitutional right.

SO ORDERED.

ELLEN BREE BURNS, SENIOR JUDGE
UNITED STATES DISTRICT COURT

Dated at New Haven, CT, this ___ day of May, 2005.

11